**NOT FOR PUBLICATION**                                                                         **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MIMS HACKETT, JR., | : Hon. Faith S. Hochberg |
| Plaintiff, | : Civil Case No. 10-2547 (FSH) (PS) |
| v. | : **OPINION & ORDER** |
| STATE OF NEW JERSEY, *et al.*, | : Date: November 3, 2010 |
| Defendants. | |

**HOCHBERG, District Judge:**

**I.     INTRODUCTION**

Plaintiff Mims Hackett brings this lawsuit alleging that defendants published his social security number in the newspaper, in violation of federal and state statutes and his constitutional rights.  The defendants are: the State of New Jersey; the New Jersey Attorney General's Office; the New Jersey Attorney General in her official capacity; former New Jersey Attorney General Anne Milgram individually (collectively, the "State Defendants"); Newark Morning Ledger Co.; The Star-Ledger; NJ On-Line, LLC; NJ.com; Rick Hepp; and Kevin C. Dilworth (collectively, the "Newspaper Defendants").  The State Defendants now move to dismiss the complaint as against them, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**II.    SUMMARY OF THE ALLEGATIONS**

Mr. Hackett was formerly the mayor of Orange, New Jersey and a New Jersey State Assemblyman.  In September 2007, he was indicted on federal bribery charges in

connection with an FBI sting operation.  In light of the federal charges, the state commenced an investigation into Mr. Hackett.  That investigation led to state charges being filed against Mr. Hackett for submitting false receipts and expense vouchers.  Subsequently, the State Defendants allegedly submitted the state indictment to the Newspaper Defendants for publication.  Mr. Hackett alleges that defendants failed to redact Mr. Hackett's social security number from the state indictment, with the result that it was published in the newspaper.  At the time of the alleged wrong, Ms. Anne Milgram was the New Jersey Attorney General.

### III.   PROCEDURAL HISTORY

The complaint has nine counts.  Six counts are against the State Defendants: 1) violating the Freedom of Information Act; 2) violating the Privacy Act of 1974; 3) violating the New Jersey Open Public Records Act; 4) violating the New Jersey Identity Theft Protection Act; 5) violating plaintiff's rights under the First, Fourth, and Fourteenth Amendments; and 6) the New Jersey Tort Claims Act.  Mr. Hackett seeks damages, an injunction enjoining the State Defendants from continuing their alleged pattern and practice of violating his rights, and placement of the State of New Jersey and the New Jersey Attorney General's Office in receivership to implement proper training procedures.

The complaint asserts Counts One through Five, as set forth above, against the Newspaper Defendants, in addition to Counts Seven and Eight, which both sound in common law negligence.[1]  On August 9, 2010, Counts One, Two, Three, and Five were dismissed as to the Newspaper Defendants.  As a result, only Counts Four, Seven, and Eight remain against the Newspaper Defendants, of all which arise under state law.

---

[1]   Count Nine is against fictitious defendants, and need not be addressed here.

IV.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted). When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

V.      DISCUSSION

    A.     **Federal Claims**

        1.     <u>The Eleventh Amendment</u>

Mr. Hackett seeks damages against the State Defendants. The Eleventh Amendment bars any suit in federal court for damages against a state or state officials in their official capacity. *See Hyatt v. County of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009). That includes actions for constitutional violations under § 1983. *Id.* (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Insofar as Mr. Hackett seeks damages against the State of New Jersey, the New Jersey Attorney General's Office, or the New Jersey Attorney General in her official capacity, the Court lacks jurisdiction to hear the case.

The complaint purports to request prospective injunctive relief for the alleged disclosure of Mr. Hackett's social security number in 2007 or 2008.[2] Under certain circumstances, a federal court may hear claims for prospective injunctive relief against state officials under *Ex Parte Young*. However, a plaintiff may not circumvent the Eleventh Amendment by artfully pleading what is in essence a claim for damages as one for prospective injunctive relief. Courts look to the essence of the relief sought to determine whether a claim is barred. *See Papasan v. Allain*, 478 U.S. 265, 277-79 (1986). When a claim is, in essence, to compensate a plaintiff for a past injury, it may not be brought against a state or its officers in their official capacity. *Id.* at 278. Here, Mr. Hackett in essence seeks compensation for a past injury: the alleged disclosure of his social security number in 2007 or 2008. Accordingly, this Court does not have jurisdiction to hear Mr. Hackett's federal claims (Counts One, Two, and Five) as against the State of New Jersey, the New Jersey Attorney General's Office, or the New Jersey Attorney General in her official capacity.

---

[2] Mr. Hackett does not specify in the complaint when the state indictment containing his social security number was allegedly published. He pleaded guilty to a charge of second-degree official misconduct on May 27, 2008.

      2.    <u>Ms. Milgram Individually</u>

The Eleventh Amendment may not bar this action insofar as it is against Ms. Milgram in her individual capacity. *See Slinger v. New Jersey*, 366 F. App'x 357, 360 (3d Cir. 2010) (explaining that "the Eleventh Amendment does not bar suits brought against state officials in their individual capacities, even if the actions which are the subject of the suit were part of their official duties") (citing *Hafer v. Melo*, 502 U.S. 21 (1991)). Since the claims against Ms. Milgram are legally defective, the Court need not reach this question.

Both FOIA (Count One) and the Privacy Act (Count Two) apply exclusively to federal agencies, not state officials. *St. Michael's Convalescent Hosp. v. California*, 643 F.2d 1369, 1373 (9th Cir. 1981); *Gamble v. Dep't of Army*, 567 F. Supp. 2d 150, 154 (D.D.C. 2008) (dismissing FOIA and Privacy Act claims against state actors because "both statutes are limited to entities deriving their authority from the federal government"). At the time of the events alleged in the complaint, Ms Milgram was the Attorney General of New Jersey. Consequently, Counts One and Two are dismissed as against Ms. Milgram.

With respect to the federal constitutional claims (Count 5), Ms. Milgram is entitled to qualified immunity. The doctrine of qualified immunity is intended to shield state officers from civil liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzpatrick*, 457 U.S. 800, 818 (1982). Because qualified immunity "is an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original), it should be resolved at the earliest possible stage in the litigation. *See Pearson v. Callahan*, 129 S.

Ct. 808, 815 (2009) (noting that the "driving force" behind the creation of qualified immunity was to ensure that unsupported claims are resolved early).

To determine whether a state officer is entitled to qualified immunity, the Third Circuit, following *Saucier v. Katz*, 533 U.S. 194, 201 (2001), has employed a two-step inquiry. In step one, the Court must determine whether the allegations, viewed in the light most favorable to plaintiff, establish a constitutional violation. *Curley v. Klem*, 298 F.3d 271, 277-78 (3d Cir. 2002). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002). If, however, "a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. The Court may begin its analysis with either prong. *Pearson*, 129 S. Ct. at 818.

Several courts have held that publishing a social security number is not a federal constitutional violation. *See, e.g.*, *Lambert v. Hartman*, 517 F.3d 433, 441-46 (6th Cir. 2008); (dismissing § 1983 suit for wrongful disclosure of SSN on grounds that it is not a constitutional violation to disclose publicly a plaintiff's SSN); *Sebree v. Kenderine*, No. L-07-1674, 2008 WL 6496686, at *2 (D. Md. Mar. 19, 2008) (same), *aff'd*, 294 F. App'x 783 (4th Cir. 2008); *cf. McCauley v. Computer Aid, Inc.*, 242 F. App'x 810, 813 (3d Cir. 2007) (holding that there is no constitutional right to privacy in one's SSN); *Cassano v. Carb*, 436 F.3d 74, 75 (2d Cir. 2006) (same); *McElrath v. Califano*, 615 F.2d 434, 441 (7th Cir. 1980) (same). *A fortiori*, allegedly publishing Mr. Hackett's social security number by submitting a state indictment (which is a public document) to the newspaper was not a "well established" federal constitutional violation

6

when it allegedly occurred. Ms. Milgram is entitled to qualified immunity as to the federal constitutional claims in Count Five.

### B. State Law Claims

Since the complaint does not state a claim for relief against the State Defendants under federal law, the Court declines to exercise supplemental jurisdiction over Mr. Hackett's state law claims against the State Defendants under 28 U.S.C. § 1367(c)(3).

### C. The Newspaper Defendants

Pursuant to Federal Rule of Civil Procedure 12(h)(3), the Court raises the question of its own jurisdiction *sua sponte*. The remaining claims in this case (namely Counts Four, Seven, and Eight against the Newspaper Defendants) all arise under New Jersey state law. There is no apparent independent basis for federal jurisdiction over these claims, such as diversity of citizenship. Accordingly, the Court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

## VI. CONCLUSION & ORDER

For the reasons set forth in this opinion, the State Defendants' motion to dismiss is **GRANTED**. In addition, Counts Four, Seven, and Eight against the Newspaper Defendants are **DISMISSED *SUA SPONTE* WITHOUT PREJUDICE**. This case is **CLOSED**.

       /s/ **Faith S. Hochberg**
       Hon. Faith S. Hochberg, U.S.D.J.